White v. Phelps.

## J. V. R. White

*vs.*

## A. J. Phelps.

When a promissory note, payable to order, is transferred after its maturity, without endorsement by the payee, as collateral security for the payment of a debt due on a day certain, upon default by the pledgor in the payment of the principal debt, the pledgee, under the statute of this State, may maintain an action in his own name against the maker of the note for its collection.

In such case a demand by the pledgee is not necessary to enable him to sue.

Whether the pledgor should be made a party defendant in such action, *quære*.

This action was commenced in the Court of Common Pleas, Ramsey county. The plaintiff for a cause of action alleged, substantially, that one Benjamin Phelps executed to him his promissory note, and transferred and delivered to him a certain promissory note of the defendant, then past due, (described in the complaint,) as collateral security for its payment; that the said note of Benjamin Phelps was due and unpaid. He demanded judgment against the defendant for the amount due on his note so pledged by Benjamin Phelps. A demurrer was interposed to the complaint, which was sustained by the court below. The plaintiff appeals to this court.

P. De Rochebrune for Appellant.

I.—The pledge of commercial paper as security for a loan of money, does not, in the absence of a special power for that purpose, authorize the pledgee upon the non-payment of the debt, and upon notice to the pledgor, to sell the securities either at public or private sale, but he is bound to hold and collect the same, as they become due, and apply the money to the payment of the loan. *Newbould vs. Wheeler*, 16 *N. Y.*, 392.

II.—The code has dispensed with the rule requiring the assignee of a chose in action to use the name of the assignor in bringing suit, but it does not therefore follow that the legal estate of the thing assigned passes to the assignee. 5 *Minn. R.*, 352 ; 2 *Minn. R.* 44, *and also* 107.

III.—A pledge is where goods are delivered by a debtor to his creditor, to be retained until his debt is discharged. An actual delivery is necessary to render the pledge valid. *Story on Bailments*, 197.

IV.—As possession and delivery are necessary, nothing of which the pledgor cannot give immediate possession can be pledged. He may, however, pledge money, negotiable instruments, &c. *Cowan Treatise, Sec.* 617 ; *Story on Contracts.*

V.—Where a person receives notes as collateral security to be collected, the pledgee is bound to use due diligence in keeping and collecting them. *Noland vs. Clark,* 10 *B. Monroe,* 239 ; *Fabens vs. Mercantile Bank,* 23 *Pick.,* 330 ; *Exeter Bank vs. Gordon,* 8 *N. Hampshire,* 66 ; *Goodall vs. Richards,* 14 *N. Hampshire,* 567.

VI.—The holder of a note, bill or check, is *prima facie* to be deemed the rightful owner of it. 3 *J. C.* 5, *also,* 259 ; 4 *Hill,* 442.

VII.—When a negotiable note, payable to order, is transferred without endorsement, the holder takes it as a chose

in action, and maintains an action upon it in his own name. *Van Emon vs. Stanchfield*, 10 *Minn. R.*, 255.

VIII.—The pledgor relinquishes all his rights against the maker of the note, in favor of the plaintiff. He gives him authority to receive the whole proceeds, and looks to him only for the balance. Authority to bring suit necessarily follows the right to collect. 2 *Minn. R.*, 44 ; *Story on Bailments, Sec.* 321.

C. K. Davis for Respondent,

I.—This was a case of pledge. The overdue note of a third person was deposited with the plaintiff as collateral to another note executed by the defendant to him. It was not endorsed. It was not intended that the absolute title should pass. This is fully shown by the complaint.

II.—When default in the terms of a pledge is made, the pledgee can assume no rights of perfect ownership, as by sale, until he has made a demand of the pledgor of the original debt. *Edwards on Bailments*, 250; *Wilson vs. Little*, 2 *Comstock*, 443. Even then the pledgee occupies such a fiduciary relation that he cannot be a purchaser. *Allen vs. Chatfield*, 8 *Minn.*, 435. No demand is alleged in the complaint.

III.—The appellant had, by his contract, the mere right of detention of this note. True, this right might be enlarged by proper action, so as to embrace the entire title. It is not pretended that this was done. There was no endorsement of this note. There was no delivery without endorsement, with the intent that full title should pass, as in the case cited from the 10*th Minn.*, the legal ownership was in the pledgor, subject to a subordinate and qualified equity in

vol. xiv.—3

the pledgee; and until the interest of the pledgor was extinguished, he was the only party whom the law recognizes as having the right to be plaintiff, for the collection of this note.

IV.—The case of *Wheeler vs. Newbould*, cited from 16 *N. Y.*, 392, is not relevant. Notes were pledged in that case, it is true, but they did not become due until *after* the maturity of the debt to which they were collateral. But the pledgee sold the pledge at the moment the original debt became due, and the court held that under the peculiar equities of the case, the pledgee should have waited until the due day of his collaterals, and then received the money on them, they having been promptly paid at maturity to the purchaser at the pledgee's sale. The case does not decide that the pledgee could have sued in his own name. I have found no case which asserts such a principle.

*By the Court*—McMILLAN, J.—The principal question presented by the demurrer to the complaint in this action is whether the transfer and delivery of a promissory note after maturity, and without endorsement, as collateral security for the payment of a debt, enables the pledgee, upon default of the pledgor, to maintain an action on the note in his own name against the maker. The transaction is in the nature of a pledge, and the rights and liabilities of the parties must be determined by the law applicable to pledges of personal property of this character. It is a well settled rule of law relating to this class of bailments, that the general property in the pawn remains in the pledger, and a special property therein passes to the pledgee.

There is no rule of law which limits or defines absolutely the special property of a pledgee, but the rights and liabilities of the latter are to be determined from the terms, ex-

press or implied, of the contract between the parties, and we apprehend that whatever special interest or estate in the pawn is necessary to enable the pledgee to exercise the rights guaranteed to him, or discharge the obligations imposed on him by the contract, will vest in him.

Let us consider then, so far as it is necessary, what are the rights and liabilities of the parties in this case.

Where goods are deposited to secure a loan, "It may be inferred," says Gibbs, C. J., "that the contract was this : If I (the borrower,) repay the money, you must redeliver the goods, but if I fail to repay it, you may use the security to repay yourself. *Pothonier & Hodgson vs. Dawson*, 1 *Holt, N. P.*, 383, 3 *Eng. Com. Law*, 154.

The primary, and indeed the only purpose of the pledge, is to put it into the power of the pledgee to reimburse himself for the money advanced, when it becomes due and remains unpaid.

The contract carries with it an implication that the security shall be made effectual to discharge the obligation. *Wheeler vs. Newbould*, 16 *N. Y. Rep.*, 396. When the pledge is given as collateral security for the payment of a debt, it can be made effectual to pay the debt only by being converted into money ; and in the absence of any special agreement to the contrary, and where there is nothing in the nature of the pawn inconsistent with such intention in the parties, the pawnee may proceed to sell the property without judicial process, upon giving reasonable notice to the debtor to redeem.

The means generally resorted to for the accomplishment of the purpose of the pledge is a sale of the property pledged, and writers upon the subject generally state this as the power conferred upon the creditor to satisfy his debt. *Story's Eq. Jur.*, *Sec.* 1,008 ; 2 *Kent Com.*, 582.

White v. Phelps.

But there is nothing in the nature of this bailment which absolutely requires a sale in all cases. And if the subject of the pledge is such that from its nature it is to be inferred with reasonable certainty that the parties intended to restrict the pawnee in the exercise of his powers to a proceeding in chancery, he will not be permitted to sell without a decree. *Clark vs. Gilbert,* 2 *Bing. N.C.,* 356, explained ; *Smith's Lea. Cases, p.* 298, 299. Or if from its nature the pawn cannot be converted into cash without injury to both or one of the parties, and may be converted into money by some other method more beneficial to the parties, we think the pledgee is permitted, and in equity, if not at law, required to pursue the latter course ; for the bailment is for the mutual benefit of both parties, and is in the nature of a trust. " The creditor (says Kent,) is required at his peril to deal fairly and justly with the pledge. " The law, " especially in the equity courts, is vigilant and jealous in its circumspection of the conduct of trustees." 2 *Kent Com.,* 583.

In the case under consideration there is nothing in the contract expressly restricting the power of the pledgee in the disposition of the pledge. Is there anything in the nature of the pledge from which it is reasonably to be inferred that the parties intend to prohibit a sale of the pledge, either with or without judicial process ; or to afford any remedy concurrently with a sale, or to restrict the pledgee, in any event, in pursuing his remedy to a proceeding in chancery ?

The pawn in this case is an unendorsed negotiable note. There are no facts or circumstances going to show that the amount of the note, so far as the maker is concerned, cannot be fully realized in a suit at law. Under these circumstances, we think the pawnee is not permitted to dispose of the note by sale.

White v. Phelps.

The reasoning of Brown, J., on the same question, in *Wheeler vs. Newbould*, fully sustains this conclusion. Is there anything in the nature of the pawn in this case which would reasonably indicate an intention to restrict the pledgee to a proceeding in chancery, in realizing his debt from the property pledged? If there is not, the party has an election to pursue his remedy either at law or in equity. The rights and remedies of parties to promissory notes are generally within the exclusive jurisdiction of the courts of law. If in this case the pledgee has not a remedy by action at law—and we are right in the view we have taken of the power of sale—it is only because the note is not endorsed by the payee. Does this deprive him of his right of action at law? It is doubtless true, that by the law merchant, if a promissory note is originally payable to a person, or his order, it is properly transferrable by indorsement, and that the indorsement of the payee is necessary to pass the legal title to a third person, so that at law, in the absence of statutory provision to the contrary, he can maintain an action on the note in his own name. But by a transfer without an indorsement, the holder will acquire the same rights that he would acquire upon a transfer of a note not negotiable, that is, he may at law sue the other parties thereto in the name of the payee or assignor. *Story on Prom. Notes*, § 120, n. 3; *Story on Bills*, § 201, n. 3; *Jones vs. Wetter*, 13 *Mass.*, 304–6. Does the pledge of a note unendorsed operate as an assignment of it? It is to be observed that the contract of pledge exists in law, as well as equity, and that by operation of law the pledgee takes not a lien only, which is merely a right to retain until the debt in respect of which the lien was created, has been satisfied, but a property—an ownership in the property pledged. *Story on Bailments*, § 93, *g. h. c.* It is a special ownership, that is, it is special

from the fact that it is limited in its character; it is an ownership limited to the purposes of the pledge, but as to these purposes the property in the pawn is vested in the pledgee, and the rights of the pledgee to the same extent are paramount to those of the pledgor.

The purpose of the pledge is, as we have seen, that the pledgee may reimburse himself for his debt when it becomes due, and remains unpaid; this can only be done by converting the pledge into money; this then he has a *right* to do in a *bona fide* manner, and the contract assigns him such a property in the pledge as will enable him to do it. Whether it is a note or goods and chattels makes no difference, the property passes, but in the case of a negotiable note, the pledgee, in any action in a court of law which requires a legal title to the property in the plaintiff, must proceed in the name of the payee of the note, unless there is statutory provision to the contrary.

Assuming that we are right thus far, we think our statute has so changed the law as to permit the pledgee, after default of the pledger, to maintain an action in his own name. The statute reads as follows: "Every action shall be prosecuted in the name of the real party in interest, except as hereinafter provided, but this section does not authorize the assignment of a thing in action not arising out of contract." *Gen. Stat., Ch. 66, Title 3, Sec. 26, p.* 453. In considering this section with reference to the right of action upon a note unendorsed, Flandrau, J., says, "The only question under our practice is, in whom is the real substantial ownership and property of the note? In whomsoever that is found, there the cause of action is also." *Pease, Chalfant & Co., vs. Rush, Pratt and others,* 2 *Minn.,* 111.

As the plaintiff by the pledge acquired a substantial ownership and property in the note, an action brought for the

purpose of enforcing a right incident to that property or ownership, must under our statute be brought in his own name. It is true the pledger also retains a property in the pledge, but it is entirely distinct and separate from that of the pledgee, and their interests are perhaps adverse; it is neither necessary nor proper, therefore, that they be joined as plaintiffs in this action.

The debt, to secure which the pledge was given, was payable at a specific time; when the debt to secure which the pledge was given, is payable at a time certain, and the pawn is a promissory note, no demand by the pledgee is necessary before bringing a suit upon the note pledged. *Story on Bailments*, *Sec*. 308; 2 *Pars. on Cont.*, 120.

Whether the pledger should not be made a party defendant in this action, is a question not presented by the demurrer, and one upon which we express no opinion.

Order sustaining demurrer overruled.