# SOUTHWEST CATTLE LOAN CO. *v.* NEVADA PACKING CO.

No. 2874

October 18, 1930.                    292 P. 587.

*Wm. A. Freeman* and *Sardis Summerfield,* for Appellant:

*Price & Hawkins, C. M. Hawkins* and *Hester H. Mayotte,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

Appellant sued respondent in conversion to recover the value of 331 head of cattle, claimed under a California chattel mortgage. Judgment went for respondent upon the pleadings; appellant appeals from the judgment upon the judgment roll alone.

The parties are Nevada corporations and will be designated plaintiff and defendant. The plaintiff, as indicated by its corporate name, is and was engaged in the business of loaning money secured by chattel mortgages on live stock, and has its principal office at Los Angeles, California. The defendant, as indicated by its corporate name, is engaged in the business of slaughtering live stock, vending and packing the products thereof, and has its principal place of business at Reno, Washoe County, Nevada. A summarization of the material facts contained in the pleadings follow:

The complaint alleges, in substance, that in Los Angeles, California, on June 22, 1926, one Sam B. Gentry, a resident of Clark County, Nevada, executed and delivered to plaintiff his chattel mortgage upon 375 head of cattle then located upon pasture in Mono County, California, to secure the payment of three promissory notes aggregating the principal sum of $15,000, together with interest, given as evidence of his indebtedness to the plaintiff.

The complaint alleges the due execution and recordation of the mortgage in Mono County, California, where the mortgaged property was located, and its due recordation in Clark County, Nevada, where the mortgagor resided. The complaint alleges that between July 15, 1926, and November 5, 1926, Gentry, the mortgagor, contrary to and in violation of the terms and conditions of his mortgage, and without the knowledge, acquiescence, or consent of the plaintiff, removed 331 head of said mortgaged cattle from Mono County, California, and sold and delivered the possession of same to the defendant, who unlawfully converted the same to its own use and benefit; that at the time and place of said conversion the cattle so converted were of the reasonable worth and value of $13,485, wherefore plaintiff demanded judgment for said sum as damages.

In its amended answer to the complaint, the defendant denied upon information and belief practically all its material allegations, but admitted that between the dates mentioned in the complaint, to wit, between July 15, 1926, and November 5, 1926, one Sam B. Gentry sold to the defendant, and the defendant purchased from Gentry, 306 head of cattle in the actual possession of the seller in Washoe County, and delivered the same to the defendant; that said purchase was made in good faith for value, and without any notice whatsoever of any claim or right or interest or lien upon said cattle, or any thereof, claimed, possessed, existing, or belonging to the plaintiff; and that by reason of said sale and purchase the defendant was and is now entitled to the exclusive possession and title to said cattle. The answer denies that the cattle so purchased were of the value

of $13,485, or any sum or amount in excess of $11,082.40, the amount paid therefor by the defendant.

As new matter, the defendant pleaded in hæc verba various sections of the Civil and Political Codes of California relating to the execution, recordation, and foreclosure of chattel mortgages, and alleged in substance that by reason of the plaintiff's failure to comply therewith its mortgage was secret, void, and unenforceable against the defendant.

The plaintiff did not within the time required by statute demur to or make reply to the new matter contained in the defendant's answer.

The record disclosed that, upon the calling of the case for trial to the court without a jury, counsel for the defendant moved orally for judgment upon the pleadings for plaintiff's failure to make reply to the new matter contained in its answer. The motion came on for hearing and was submitted for decision upon briefs. The court having time to consider of its decision on, to wit, April 23, 1929, decided and adjudged that the defendant was entitled to judgment on the pleadings, irrespective of the merits of the case. Thereafter the plaintiff filed and served its notice of intention to move for a new trial, but afterwards abandoned this procedure and perfected its appeal to this court from the judgment on the judgment roll alone.

There is much discussion in the briefs concerning the practice relating to judgments on the pleadings for failure to reply. Our statute provides that; when the answer contains new matter constituting a defense, the plaintiff shall, within ten days after service thereof, or within ten days after the overruling of a demurrer thereto, serve and file a reply, and, if the plaintiff fails to demur or reply to such new matter constituting a defense, the same shall be admitted as true. Stats. 1915, p. 192, c. 158.

■■ A motion for judgment on the pleadings is in the nature of a demurrer. 49 C. J. 668. Consequently the question of whether or not the new matter consisting of the provisions contained in the Civil and Political

Codes of California as pleaded constitute a defense is purely one of law. We interpret the phrase "constituting a defense," as employed in our statute, to mean a defense which in law operates to defeat the cause of action. It is held in California that a defendant is not entitled to judgment because of the failure to reply where the admissions resulting from the failure to reply do not defeat plaintiff's cause of action. Lubarsky v. Chavis (Cal. App.), 279 P. 205; Bussenius v. Warden, 71 Cal. App. 717, 236 P. 371.

■ The particular sections of the California laws incorporated in the judgment include sections 408 and 4130 of the Political Code, as amended, Stats. Cal. 1923, p. 141, sec. 1, and page 144, sec. 1; section 2965 of the Civil Code, as amended by Stats. Cal. 1923, p. 139, sec. 2.

Section 408 of the Political Code, as amended, provides inter alia that the secretary of state shall provide a form of certificate to be used by county recorders, as provided in section 4130 of the Political Code, in which shall be set out the names of the mortgagor and mortgagee, date of record, amount secured by such mortgage, with such description of the live stock, vehicles (other than motor vehicles), or other migratory chattels, as such mortgage may contain; and that it shall be the duty of the secretary of state to receive and file such certificates of recordation, when transmitted by the county recorders, as provided in section 4130; and to provide and keep two alphabetical indices of such certificates in manner and form as provided in the section.

Section 4130 of the Political Code provides, in substance, that whenever a mortgage is filed in the office of the county recorders purporting to create a lien on live stock, vehicles (other than motor vehicles), or any other migratory chattels, then it shall be the duty of such recorders to collect, in addition to the regular recording fee, an additional fee of 75 cents, and thereupon make certificate over his official signature upon the forms provided by the secretary of state, and

forthwith transmit the same to the secretary of state, together with 50 cents of such additional fee so collected.

Section 2965 of the Civil Code, as amended by the Statutes of 1923, p. 139, sec. 2, reads as follows:

"When personal property mortgaged is thereafter removed from the county in which it is situated, the lien of the mortgage shall not be affected thereby for thirty days after such removal; but, after the expiration of such thirty days, the property mortgaged, save in the case of live stock, vehicles (other than motor vehicles) and other migratory chattels, is exempted from the operation of the mortgage, except as between the parties thereto, until either:

"1. The mortgagee causes the mortgage to be recorded in the county to which the property has been removed; or

"2. The mortgagee takes possession of the property as prescribed in the next section.

"If a mortgage of live stock, vehicles (other than motor vehicles) or other migratory chattels has been recorded as provided in section two thousand nine hundred fifty-nine and within thirty days thereafter a certificate of such record has been filed by the county recorder with the secretary of state as required by sections four hundred eight and four thousand one hundred thirty of the Political Code the property mortgaged may be removed into any county in the state without in any way affecting the lien of the mortgage."

Section 2966 of the Civil Code, as amended by Stats. 1923, p. 140, sec. 3, referred to in the foregoing section, provides: "If the mortgagor voluntarily removes or permits the removal of the mortgaged property save in the case of live stock, vehicles (other than motor vehicles) and other migratory chattels from the county in which it was situated at the time it was mortgaged, the mortgagee may take possession and dispose of the property as a pledge for the payment of the debt, though the debt is not due."

Section 2957 of the Civil Code of California provides:

"A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless:

"1. It is accompanied by the affidavit of all the parties thereto that it is made in good faith and without any design to hinder, delay, or defraud creditors;

"2. It is acknowledged or proved, certified, and recorded in like manner as grants of real property."

We have thus outlined the lex loci pertaining to the validity, the execution, and the recordation of chattel mortgages, and pertaining to the removal of mortgaged personal property from the county where the mortgage was first recorded to another county within the state of California, all for the purpose of determining whether the lien of the mortgage of the live stock in question is enforceable in this forum under the doctrine of comity between states.

The correctness of counsel's position depends upon the effect a noncompliance with the requirements of section 2965, pertaining solely to a mortgage of live stock, has upon the original recordation of the mortgage as constructive notice. If we were dealing with that portion of section 2965 which pertains to the removal of mortgaged personal property other than migratory chattels, we should be impelled to conclude that failure to comply with its requirements would exempt, ipso facto, the property from the operation of the mortgage so far as it affects creditors, bona fide purchasers and incumbrancers. Hopper v. Keys, 152 Cal. 488, 92 P. 1017. In that case on rehearing it was held that the requirement that the mortgage, when the property is removed, shall be filed in the county to which such removal takes place was for the protection of creditors and bona fide purchasers and incumbrancers, and not for the purpose of prolonging the lien as between the parties. In Hammels v. Sentous, as reported in 151 Cal. 520, 91 P. 327, 12 Ann. Cas. 945, Hopper v. Keys, supra, is cited in support of the proposition that, under section 2965, the omission to do the things required by the section

destroyed the effect of the original recordation of a chattel mortgage as constructive notice to all the world. No good or sufficient reason has been advanced why a failure to comply with the requirements of section 2965, as amended, does not have the same effect upon the original recordation of a mortgage of live stock as constructive notice. We take it that the meaning of the word "if," as used in section 2965, imports the condition that, for the protection of the security against creditors, purchasers, and incumbrancers, a certificate of the recordation of a mortgage of live stock shall be filed with the secretary of state within the time and in the manner prescribed in the section.

We are not impressed with the argument of counsel that the sole purpose of the amendment pertaining to mortgages of live stock and other migratory chattels, as distinguished from mortgages of other personal property, was intended to relieve the mortgagee of the necessity of refiling his mortgage in the county to which the mortgaged live stock may be removed, and that the amendment is merely local in its operation. The plain import of the statute as amended, in our opinion, is that nothing but a compliance with its terms will protect a mortgage of live stock against bona fide purchasers from the mortgagor within or without the state.

It appearing affirmatively from the pleadings that the plaintiff failed to pursue the remedy provided in section 2965 for the protection of the lien of its mortgage, it therefore cannot, under the doctrine of comity between states, recover the value of the property in question from the defendant, an innocent purchaser in good faith and for value in this, the forum to which the live stock was removed.

Other questions are discussed in the briefs which have been considered, but they do not require special notice. The trial court's construction of section 2965, in our opinion, was correct.

Therefore the judgment is affirmed.